Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4850 | **DATE** | 12/7/2000 |
| **CASE TITLE** | Torres vs. The City of Chicago, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The City's motion to dismiss (5-1) is denied. Enter Memorandum Opinion and Order. Trial set for 6/18/01 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 3 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 0 8 2000 date docketed | 13 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| MPJ | courtroom deputy's initials | 00 DEC -7 PM 3:51 | 12/7/2000 date mailed notice | |
| | | Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANGELINA TORRES, as Special )
Administrator of the Estate of )
HECTOR RIVERA, deceased, )
 )
 )
Plaintiff, )
 )
v. ) No. 00 C 4850
 )
THE CITY OF CHICAGO, a municipal )
corporation, et. al., )
 )
Defendants. )

**DOCKETED**
**DEC 0 8 2000**

## MEMORANDUM OPINION AND ORDER

I.

In the early hours of July 24, 1998, police officer employees of the City of Chicago (the "City") responded to a report of a shooting in the 1200 block of North Washtenaw. At approximately 2:10 a.m., the officers arrived on the scene of the shooting, where Hector Rivera was lying on the floor, bleeding from multiple gunshot wounds. According to the allegations in the complaint, when the officers arrived, witnesses to the shooting informed them that Mr. Rivera was in need of immediate medical care, but the officers waited for nearly an hour an a half, until 3:33 a.m., to summon medical care. Mr. Rivera died, and Angelina Torres, the administrator of his estate, sues for willful and wanton conduct under the Illinois Wrongful Death Act and the Survival Act, and for



the violation of Mr. Rivera's rights under 42 U.S.C. § 1983.[1] The City removed the case to federal court and now moves to dismiss for failure to state a claim.

II.

On a motion to dismiss, I accept all well-pleaded factual allegations of the plaintiff and draw all reasonable inferences in favor of the plaintiff. *Colfax Corp. v. Illinois State Toll Highway Auth.*, 79 F.3d 631, 632 (7th Cir. 1996). Dismissal is only appropriate if it appears beyond doubt that the plaintiff can prove no set of facts which would entitle her to relief. *Id.* Under federal notice pleading, the complaint need not allege any facts; *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998); the plaintiff may plead conclusions, *Jackson v. Marion County*, 66 F.3d 151, 153 (7th Cir. 1995).

III.

The City argues that Torres fails to state a claim under 42 U.S.C. § 1983 for municipal violations because her complaint fails to specify a municipal policy or a constitutional injury. A municipality cannot be held liable for the actions of individual employees under § 1983 based on a theory of *respondeat superior*. *Monell v. Department of Soc. Servs. of the City of New York*, 436 U.S. 658, 691 (1978). A municipality may, however, be liable if

---

[1] The complaint also includes a § 1983 claim against the individual officers, but here I address only the claims against the City.

the plaintiff can show that he or she suffered a constitutional deprivation that was caused by an official policy, custom, or usage of the municipality. *Id.* at 690-91.

The City attacks Torres' pleadings as excessively conclusionary. However, federal pleading is "notice" pleading, and plaintiffs may plead conclusions. *Jackson v. Marion County*, 66 F.3d 151, 153 (7th Cir. 1995). Under Fed. R. Civ. P. 8(a)(2), the plaintiff need only include a "short and plain statement of the claim showing that the pleader is entitled to relief." Unlike "fact" pleading, required in some states, "notice" pleading does not require the plaintiff to "plead law or match facts to every element of a legal theory." *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998). Indeed, "a complaint is not required to allege all, *or any*, of the facts logically entailed by the claim. . . . A plaintiff does not have to plead evidence. . . ." *Id.* (quoting *American Nurses' Assn. v. Illinois*, 783 F.2d 716, 727 (7th Cir. 1986)) (emphasis in original).

The Supreme Court has expressly rejected a heightened pleading standard for § 1983 claims against municipalities. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993). Although after *Leatherman* the Seventh Circuit stated that "[b]oilerplate allegations of a municipal policy, entirely lacking in any factual support that a city policy does exist, are insufficient," *Sivard v. Pulaski County*, 17 F.3d

3

185, 188 (7th Cir. 1994) (quoting *Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 202 (7th Cir. 1985)), *cited in Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 479 (7th Cir. 1997), -- and I followed this in *Mosby v. Bell*, 60 F. Supp.2d 788, 790 (N.D. Ill. 1999) -- it recently held that such "boilerplate" allegations are indeed sufficient.[2] *McCormick v. City of Chicago*, 230 F.3d 319, 324-25 (7th Cir. 2000). Conclusory language in the complaint was sufficient to put the City on notice of the claims even though it did not plead facts. *Id.* at 325.

The City asks me, in essence, to disbelieve Torres' allegations of the existence of a constitutional violation and municipal policy because she has not backed them up with facts. She does not have to. On a motion to dismiss, I must take all of the well-pleaded allegations of the complaint as true. *Wardell v. City of Chicago*, 75 F. Supp.2d 851, 854 (N.D. Ill. 1999). Torres has alleged that Mr. Rivera's Fourteenth Amendment rights to equal protection were violated by a policy of the City, and she has not pled any facts inconsistent with this claim.

---

[2] To the extent that the Seventh Circuit has held since *Leatherman* that a suit must be dismissed for failure to allege facts, it has limited that holding to apply to suits where the plaintiff has pled himself out of court by alleging facts inconsistent with his claim, even though he was not required to allege any facts. *Jackson v. Marion County*, 66 F.3d 151, 153 (7th Cir. 1995).

IV.

The Illinois Tort Immunity Act provides that a public entity cannot be liable for "failure to establish a police department or otherwise provide police protection service, or, if police protection is provided, for failure to provide adequate police protection or service. . . ." 745 ILCS 10/4-102. It also immunizes public employees "serving in a position involving the determination of policy or the exercise of discretion [from liability] for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201. Neither § 4-102 nor § 2-201 provides an exception for willful and wanton conduct. *Hernandez v. Kirksey*, 715 N.E.2d 668, 672 (Ill. App. Ct. 1999) (§ 4-102); *Harinek v. 161 N. Clark St. Ltd. P'ship*, 692 N.E.2d 1177, 1184 (Ill. 1998) (§ 2-201).

A public employee is not liable for negligence "in the execution or enforcement of any law," but he is liable if his "act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202. "Willful and wanton conduct" is defined by the Tort Immunity Act as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210. Torres

5

alleged, and I must take it as true for the purposes of this motion, that the officers' conduct was willful and wanton.

Even if she had not specifically alleged willful and wanton conduct, Illinois courts have consistently held that the failure to provide medical care upon request is willful and wanton. *See Singleton v. City of Chicago*, No. 99 C 0059, 2000 WL 224619, at *2 (N.D. Ill. Feb. 25, 2000) (Gettleman, J.). According to the complaint, Mr. Rivera was lying on the ground, bleeding from multiple gunshot wounds, and witnesses to the shooting requested medical assistance when the officers arrived, but the officers waited nearly an hour and a half to call an ambulance. Such conduct demonstrates an "utter indifference to or conscious disregard" of Mr. Rivera's safety, to say the least.

A.

Even if the officers' conduct was willful and wanton, the City argues that §§ 2-201 and 4-102 immunize it from liability under the Illinois Wrongful Death and Survival Acts.[3] Section 2-201 codifies the "discretionary immunity doctrine," which is all that survives of sovereign immunity after the abolition of such immunity for torts by the Illinois Legislature. *In re Chicago Flood Litig.*, 680 N.E.2d 265, 272 (Ill. 1997). Under § 2-201, a public employee is immune from liability only if he both determines policy and

---

[3] Although § 2-201 applies to public employees and not public entities, the City may be liable on a theory of *respondeat superior* if its employees are found to be liable. *See* 745 ILCS 10/2-109.

6

exercises discretion. *Harinek v. 161 N. Clark St. Ltd. P'ship*, 692 N.E.2d 1177, 1181 (Ill. 1998). In *Harinek*, the Illinois Supreme Court held that the Fire Marshal for the City determined policy and exercised discretion when he decided how to direct a fire drill. *Id.* at 1182.

In this case, the police officers at the scene neither made policy nor exercised discretion. Chicago Police General Order 89-3, signed by the Superintendent of Police, requires preliminary investigators at the scene of a crime to "render aid to the injured." (Pl.'s Response Exh. A). Although General Order 89-3 does not prescribe the order in which the investigators are to perform their tasks, it lists aid to the injured first, before arresting the offender, preserving the crime scene, or locating and interviewing witnesses. Drawing all inferences in favor of Torres, this suggests that rendering aid to the injured is the first thing that investigators must do when they arrive on the scene. General Order 89-3 determines policy; the officers at the scene of the shooting were charged with carrying it out.

The City argues that *Harinek* calls for an expansive interpretation of "determining policy" because the Fire Marshal had to balance competing interests and make judgment calls in planning and executing a fire drill. *Harinek* involved the determinations of the Fire Marshal, however, not individual firemen; this case involves the decisions of individual police officers charged with

7

the execution of an existing policy, not the Superintendent of Police, or even a commanding officer on the scene. The police officers in this case did not face the same competing demands faced by the Fire Marshal; they did not have to decide whether to administer first aid or CPR, they only had to pick up the phone and call an ambulance. The officers had been called to the scene to respond to a shooting, and the City cannot credibly argue that there were other more pressing tasks to attend to at the scene of the shooting than the medical needs of Mr. Rivera, who was bleeding to death on the floor. The officers in this case were not making policy determinations at all; if the facts alleged in the complaint are true, they failed to comply with existing policy when they did not "render aid to the injured" when they arrived on the scene.

Even if I concluded that the individual officers were determining policy in failing to summon medical care, they were not exercising discretion. "[D]iscretionary acts are those which are unique to a particular public office, while ministerial acts are those which a person performs on a given state of facts in a given manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act." *Harinek*, 692 N.E.2d at 1182. The Superintendent of Police may have exercised discretion in drafting General Order 89-3, but the individual officers acted ministerially in carrying it out (or not). See *In re Chicago Flood Litig.*, 680 N.E.2d at 272-73. I do

not suggest that the officers should have acted as doctors or emergency medical technicians who, though ordered to administer aid, exercise discretion in determining the best course of medical care. All that was required of the officers was to follow general orders and place a phone call to summon an ambulance, an act that does not require independent judgment. Section 2-201 does not apply to the alleged actions of the officers in this case.

B.

Section 4-102 grew out of the common law "public duty role," which protected municipalities from liability for failure to provide governmental services. *Hernandez v. Kirksey*, 715 N.E.2d 669, 672 (Ill. App. Ct. 1999). The rule rests on "public policy considerations that a police department's negligence, oversights, blunders, or omissions are not the proximate or legal cause of harms committed by others." *Id.* (quoting *Schaffrath v. Village of Buffalo Grove*, 513 N.E.2d 1026 (Ill. App. Ct. 1987)). One Illinois court has held that § 4-102 now extends not only to the failure to provide *any* police protection or service, but also to the failure to provide *adequate* police protection or service. *Id.* at 673. In *Hernandez*, the Illinois Appellate Court rejected a distinction between the absence of services and the provision of negligent services, and it applied § 4-102 to immunize the City from negligent failure to train a crossing guard. *Id.*

9

Torres argues that § 4-102 does not apply because the officers were responding to a crime scene for a shooting, a serious crime, whereas the cases cited by the City where § 4-102 was applied merely involve police officers responding to a traffic accident, *Kavanaugh v. Midwest Club, Inc.*, 517 N.E.2d 656 (Ill. App. Ct. 1987), and a crossing guard directing a pedestrian into the path of traffic, *Hernandez v. Kirksey*, 715 N.E.2d 669 (Ill App. Ct. 1999). This distinction misses the mark. What makes this case different from *Hernandez* and *Kavanaugh* is not the severity of the crime but the fact that it involves the failure to provide medical care:

Illinois cases interpreting the Tort Immunity Act have held that activities such as traffic control, roadway safety, and crime prevention are "police protection services" subject to § 4-102.[4] No Illinois court has held that "police protection services" include the provision of medical care, and one case specifically suggests that willful and wanton failure to summon medical assistance would not be covered by § 4-102. *See Towner v. Board of Educ.*, 657 N.E.2d 28, 32 (Ill. App. Ct. 1995). In *Towner*, the court held that there was no factual basis to support a claim that

---

[4] *See Dockery v. Village of Steeleville*, 558 N.E.2d 449 (Ill. App. Ct. 1990) (failure to control crowd and manage traffic); *Goebig v. City of Chicago*, 544 N.E.2d 1114 (Ill. App. Ct. 1989) (failure to provide crossing guard); *In re Estate of Vasconcelles*, 524 N.E.2d 720 (Ill. App. Ct. 1988) (failure to control person on probation); *Kavanaugh v. Midwest Club, Inc.*, 517 N.E.2d 656 (Ill. App. Ct. 1987) (failure to train crossing guard); *Lemenager v. Fitzgerald*, 274 N.E.2d 913 (Ill. Ap. Ct. 1971) (failure to prevent arson).

10

the school's conduct was willful and wanton, but it clearly implied that the result might have been different if the plaintiff had been able to demonstrate that he was injured by a willful and wanton failure to provide medical care.

The Tort Immunity Act provides further support for treating the failure to provide medical care differently from the failure to provide "police protection services" contemplated by § 4-102. In 745 ILCS 10/4-105, the Illinois legislature established immunity for merely negligent failure to provide medical care for prisoners in custody, but § 4-105 does not apply to willful and wanton failure to provide or summon medical care. "If medical care were simply included within police protection, there would have been no need to enact a specialized immunity provision conferring immunity for the failure to provide medical care for persons in custody -- for Act § 4-102 would have sufficed for the purpose all by itself." *Regalado v. City of Chicago*, 40 F. Supp.2d 1009, 1018 (N.D. Ill. 1999) (Shadur, S.J.). The failure to provide medical care does not come under § 4-102, but instead under § 2-202.

C.

Section 2-202 immunizes negligence of public employees in the execution or enforcement of the law, but it does not immunize willful and wanton conduct. The Illinois Supreme Court has held that "plaintiffs can escape the statutory immunities granted municipalities and their employees either by [a)] proving facts

11

that show the existence of a special duty and proving simple negligence or [b)] by proving willful and wanton conduct alone." *Doe v. Calumet City*, 641 N.E.2d 498, 505 (Ill. 1994). Even in the absence of a "special duty,"[5] the Court held that dismissal was improper where the plaintiff alleged that a police officer acted willfully and wantonly by ignoring the complaining witness's requests to break down her door to save her children from a rapist. *Id.* at 506. The City attempts to distinguish this case from *Doe* because *Doe* involved a crime-in-progress, but in this case the officers were securing the scene of a crime that had already been committed, and therefore were not "executing or enforcing the law" for the purposes of § 2-202. The distinction is unavailing; "an officer [need not] necessarily . . . be engaged in an emergency response in order for section 2-202 immunity to apply. Case law is clear that certain types of nonemergency conduct are immunized. For example, activities such as investigating a traffic accident and executing and enforcing traffic laws are immunized." *Sanders v. City of Chicago*, 714 N.E.2d 547, 552 (Ill. App. Ct. 1999) (citations omitted). Moreover, although the *Doe* court relied on § 2-202 in recognizing an independent cause of action for willful and wanton conduct, it did not limit liability to conduct that amounted

---

[5] Because Torres has sufficiently alleged willful and wanton conduct, I need not address the question of whether the officers owed a "special duty" to Mr. Rivera that was different from their duty to the general public.

12

to execution or enforcement of the law.  See *Doe*, 641 N.E.2d at 281.  Torres states a claim for willful and wanton conduct under *Doe*.  The City's motion to dismiss is DENIED.

ENTER ORDER:

_____
**Elaine E. Bucklo**
United States District Judge

Dated:    December 7, 2000

Copies have been mailed to:

Christopher T. Hurley
Christopher T. Hurley & Assoc. P.C.
11 S. LaSalle Street, #1340
Chicago, IL 60603

Attorney for Plaintiff

Jeffrey N. Given
Chief Asst. Corporation Counsel
30 N. LaSalle Street, #900
Chicago, IL 60602

Penelope Moutossamy-George
City of Chicago, Dept. of Law
30 N. LaSalle Street, #900
Chicago, IL 60602

Attorneys for Defendants