# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4850 | **DATE** | 3/29/2002 |
| **CASE TITLE** | Torres vs. City of Chicago, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant officers' motion for summary judgment (44-1) is granted and Count IV is dismissed with prejudice as to defendants Onorato and Badillo. The court also grants summary judgment on Count IV in favor of defendant, Sergeant Keller. Counts I and II are remanded to the Circuit Court of Cook County, Illinois. Defendant City of Chicago's motion for summary judgment (43-1) and its motion to bar (51-1) are denied as moot. Any other pending motion in this case are also terminated as moot. Enter Memorandum Opinion and Order. Any schedule set in this case is hereby vacated.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 6 | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAR 29 2002 | 15 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 3/29/2002 date mailed notice | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | MPJ6 mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANGELINA TORRES, as Special )
Administrator of the Estate of )
HECTOR RIVERA, deceased, )
)
        Plaintiff, )
)
v. )
)
CITY OF CHICAGO, a Municipal )   No. 00 C 4850
Corporation, VICTORIA ONORATO, )
ENRIQUE BADILLO, HANS KELLER, )
PATRICK LOFTUS, JOSEPH DUNIGAN, )
LEONARD STOCKER, THOMAS WEYLAND )
and ROBERT SCHUMACHER, )
)
        Defendants. )



## MEMORANDUM OPINION AND ORDER

Hector Rivera died of multiple gunshot wounds that he sustained in a shooting on the west side of Chicago, Illinois, in the early hours of July 24, 1998. The plaintiff, as the administrator of Mr. Rivera's estate, sued the City of Chicago and several of its police officers under 42 U.S.C. § 1983 and Illinois law for failing to promptly summon medical assistance for Mr. Rivera. I denied the City's motion to dismiss, *Torres v. City of Chicago*, 123 F. Supp. 2d 1130 (N.D. Ill. 2000), and the plaintiff has since voluntarily dismissed the § 1983 claim against the City, as well as against several of the individual defendants.[1] The City

---

[1] *See* Minute Order of Nov. 5, 2001 (dismissing Count III against City and dismissing defendants Robert Schumacher, Thomas Weyland, Leonard Stocker, Joseph Dunigan, and Patrick Loftus).

moves for summary judgment on the state claims against it, and defendants Victoria Onorato, Enrique Badillo and Hans Keller move for summary judgment on the § 1983 claim against them. In response to the defendants' motions, the plaintiff requests voluntary dismissal of Officers Onorato and Badillo, which I grant with prejudice, so I consider only the claims against Sergeant Keller and the City.

I.

The following facts are taken from the parties' submissions, and any differences are resolved in the plaintiff's favor. Tony Gonzales shot Luis Marrero, Iluminada Nieves and Hector Rivera at approximately 2:00 a.m. on July 24, 1998, near an apartment building at 1215 North Washtenaw in Chicago. When Gonzales ran out of bullets, he struck Yesenia Rodriguez with his gun. All of Gonzales' victims were Puerto Rican. Mr. Marrero was shot and fell on the sidewalk outside of the apartment building, and Ms. Nieves fell to the ground in front of the entrance to the building. After Mr. Rivera was shot, he fled into the bathroom of the first floor apartment and collapsed on the floor. Someone called 911 at 2:06 a.m. to report the shootings, and Officers Onorato and Badillo arrived on the scene at 2:10 a.m. An ambulance for Ms. Nieves arrived at 2:12 a.m. and left for the hospital at 2:18 a.m. Mr. Marrero's ambulance arrived at 2:18 a.m. and left at 2:29 a.m. Officers Badillo and Onorato left the scene to follow up the

investigation at the hospital shortly after the two ambulances left with Mr. Marrero and Ms. Nieves.

Kimberly Rodriguez, Ms. Nieves' daughter, who was nine years old at the time of the shootings, was asleep in the first floor apartment when Mr. Rivera was shot. She testified that she found Mr. Rivera in her bathroom at 2:30 a.m., and told the police that there was a man in her bathroom. She later testified, however, that, before the second ambulance arrived (at 2:18 a.m.), she told police officers on the scene that Mr. Rivera was injured in the bathroom. Ms. Nieves also testified that she heard Kimberly tell the police that there was an injured man in the bathroom. Several witnesses testified that the officers on the scene were aware that Mr. Rivera was injured, but dismissed requests for help by saying "he's drunk" or that they would take care of it. Mr. Marrero testified that, before he was transported to the hospital, he heard a male officer say that they should let him die because they saw a tattoo on his back which they believed to be gang-related. Waldemar Rodriguez, Kimberly's brother and Ms. Nieves' son, testified that he overheard a white, plain clothes officer, who arrived with three other plain clothes officers, say that it was a good thing that "this" (presumably the shooting) happened to Hispanics. It is undisputed that Sergeant Keller and Officers Badillo and Onorato were uniformed when they were at the scene.

3

Neither party presents any evidence to show exactly when Sergeant Keller arrived on the scene, but after the first ambulance left, he entered the Rodriguez apartment, spoke to some people in the kitchen, and found a man, presumably Mr. Rivera, though he could not positively identify him, lying on the bathroom floor. Sergeant Keller said that he thought Mr. Rivera was drunk, and that he was moaning and drooling, and did not respond verbally. Sergeant Keller testified that he did not summon medical assistance for Mr. Rivera because he did not know that he had been shot. Other witnesses testified, however, that there was blood on the floor and walls of the bathroom. Although witnesses testified that they told the police that Mr. Rivera was injured in the bathroom, there is no evidence suggesting that they specifically told Sergeant Keller. Officer Patrick Loftus, who was following forensic investigators through the apartment, later discovered Mr. Rivera in the bathroom and immediately called for an ambulance. The ambulance for Mr. Rivera was dispatched at 3:33 a.m. and arrived at 3:39 a.m. Mr. Rivera was pronounced dead at Cook County Hospital at 6:45 a.m.

The complaint alleged claims against the City for willful and wanton conduct under the Illinois Wrongful Death Act (count I) and the Survival Act (count II), and for violations of Mr. Rivera's Fourteenth Amendment right to equal protection under § 1983 (count III). Count IV alleged equal protection violations against the individual defendants. Count III has been dismissed, as have all of

the individual defendants named in count IV except for Sergeant Keller. Summary judgment is proper when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Wolf v. Northwest Ind. Symphony Soc'y*, 250 F.3d 1136, 1141 (7th Cir. 2001).

II.

Count IV alleges generally that the conduct of the individual officers, "acting under color of state law, violated Hector Rivera's right to equal protection under the Fourteenth Amendment of the United States Constitution." Compl. Count IV, ¶ 8. In response to interrogatories, the plaintiff stated that the basis of the equal protection claim was fact that the police waited one and a half hours from learning that Mr. Rivera was injured before summoning medical care, that he was Puerto Rican, and that Mr. Rodriguez overheard an officer say something "to the effect that 'these Puerto Ricans get what they deserve.'" Def. Ex. A. The individual defendants moved for summary judgment, arguing that the

5

plaintiff could not make out a claim for national origin discrimination because, among other things, she could not come forward with evidence that similarly situated non-Puerto Ricans would have been treated differently because the other two victims, who did receive prompt medical care, were also Puerto Rican. *See Chavez v. Illinois State Police*, 251 F.3d 612, 636 (7th Cir. 2001) (Plaintiff must show that members of non-protected class were treated differently.). The plaintiff essentially concedes this argument in response by arguing that the issue "is not whether non-Puerto Ricans were treated differently by Sergeant Keller." Resp. at 10.

However, the plaintiff now asserts two different theories: first, that Sergeant Keller, without any rational basis, treated Mr. Rivera, as a "class of one," differently from others who were similarly situated; and second, that Mr. Rivera's due process rights were violated by Sergeant Keller's failure to provide medical care. The City objects that the plaintiff has raised new constitutional claims in her brief, after the close of discovery, and on the eve of trial. Although a plaintiff may not amend her complaint through arguments in her brief in opposition to a motion for summary judgment, *Insolia v. Phillip Morris, Inc.*, 216 F.3d 596, 606 (7th Cir. 2000), the plaintiff has done no more than offer an alternative legal theory. All of the facts to support her legal theories appear on the face of the complaint and in her response to

the City's interrogatory. *Cf. Shanahan v. City of Chicago*, 82 F.3d 776, 779, 781 (7th Cir. 1996) (New theory depended on facts that did not appear in complaint); *Hays v. General Elec. Co.*, 151 F. Supp. 2d 1001, 1007) (N.D. Ill. 2001) (Bucklo, J.) ("A party is entitled to plead theories of liability in the alternative, but the alternative must at least be apparent from the complaint."). The complaint here gave notice of a claim for denial of medical care, whether founded on the Due Process or Equal Protection Clause of the Fourteenth Amendment, and the "class of one" claim is simply another form of equal protection claim, which was alleged in the complaint.

Nevertheless, the plaintiff cannot survive summary judgment on either of her new theories. "[T]he Due Process Clause generally confers 'no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty or property interests of which the government itself may not deprive the individual.'" *Estate of Stevens v. City of Green Bay*, 105 F.3d 1169, 1174 (7th Cir. 1997) (citing *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 196 (1989)). There are two exceptions, however, where a "special relationship" imposes a duty to protect: (1) where the plaintiff is in government custody, and (2) where the government itself created the danger to the plaintiff. *Id.* There is no evidence that Mr. Rivera was in custody at any time before medical care was summoned, or that Sergeant Keller (or any of the

7

other police officers) created Mr. Rivera's need for medical care. The plaintiff cites *Regalado v. City of Chicago*, 140 F. Supp. 2d 1009 (N.D. Ill. 1999) (Shadur, J.), for the proposition that "[o]fficers who fail to seek medical care for a man who clearly cannot seek it for himself are subject to liability under Section 1983." Resp. at 12. However, the plaintiff's "helplessness" in *Regalado* was caused by a beating received at the hands of the very police officers who denied him care. 40 F. Supp. 2d at 1015. It is undisputed that Mr. Rivera was shot by Tony Gonzales, not by Chicago police officers. The plaintiff argues that there was no telephone in the Rodriguez home, but this was also not attributable to any actions of the police. Mr. Rivera's helplessness was not caused by any of the defendants, and he was not in their custody, so Sergeant Keller had no affirmative duty to provide medical care, even if he was aware that Mr. Rivera desperately needed it. The due process claim fails.

The Supreme Court has recently acknowledged that a plaintiff may bring an equal protection claim as a "class of one," without regard to protected-class status, where the plaintiff "has been intentionally treated differently from others similarly situated and . . . there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Although the Court declined to consider whether the defendant's subjective motivation was relevant, the Court held that

8

the allegation that the disparate treatment was "irrational and wholly arbitrary" stated a claim for denial of equal protection. *Id.* at 565. The Seventh Circuit has since interpreted "class of one" claims under § 1983 to require the plaintiff to "present evidence that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000). In other words, the plaintiff must show that "the cause of the differential treatment of which the plaintiff complains was a totally illegitimate animus toward the plaintiff by the defendant." *Id.* "Ill will must be the sole cause of the complained-of action. A showing of 'uneven law enforcement,' standing alone, will not suffice." *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) (citations omitted).

The "class of one" claim fails because there is no evidence of differential treatment by Sergeant Keller, the only remaining individual defendant. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) ("Section 1983 creates a cause of action based upon personal liability and predicated upon fault."). Although Sergeant Keller admits that he did not summon medical care for Mr. Rivera, the plaintiff has not pointed to any evidence, nor could I find any in the record, to suggest that Sergeant Keller was the officer who

called for the first two ambulances. There is no evidence of differential treatment by Sergeant Keller.

Furthermore, even if there was differential treatment, the plaintiff has failed to come forward with any evidence of "ill will" or "vindictive action," *Hilton*, 209 F.3d at 1008, toward Mr. Rivera personally. The plaintiff argues that "a reasonable jury could find that Sergeant Keller was consciously indifferent to Mr. Rivera because as a young, allegedly 'intoxicated' Puerto Rican man lying incapacitated in a private residence in a gang-infested Puerto Rican neighborhood, Rivera did not warrant the same consideration for his safety as was given to Nieves and Marrero." Resp. at 11. Mr. Marrero and Ms. Nieves were also Puerto Rican and found in a gang-infested neighborhood, and Mr. Marrero was only two years older than Mr. Rivera, so a reasonable jury could not conclude that those prejudices were the cause of his differential treatment. *See Hilton*, 209 F.3d at 1008. All that remains is Sergeant Keller's testimony that he believed that the person that he found in the bathroom, whom he could not identify but presumably was Mr. Rivera, was drunk. If a jury believed that Sergeant Keller thought Mr. Rivera was drunk and not otherwise in need of medical care, then there was a rational basis for treating him differently. If jury did not believe Sergeant Keller's testimony that Mr. Rivera was drunk, there is no other evidence that Sergeant Keller personally had any improper motive toward Mr. Rivera. It is

10

undisputed that Sergeant Keller did not know Mr. Rivera or any of the other victims or witnesses who lived at the scene of the shooting, so there is no evidence of a history of ill will and the "class of one" claim fails.

The plaintiff cannot prevail against Sergeant Keller under any of the theories presented, so I need not consider whether he is entitled to qualified immunity. *See Lanigan v. Village of E. Hazel Crest*, 110 F.3d 467, 471 (7th Cir. 1997). I grant summary judgment in favor of Sergeant Keller on Count IV.

### III.

I have dismissed all of the claims in counts III and IV, over which I have original jurisdiction, and may therefore decline to exercise supplemental jurisdiction over the state law claims against the City in counts I and II. 28 U.S.C. § 1367(c)(3). In deciding whether to retain jurisdiction, I should "consider and weigh the factors of judicial economy, convenience, fairness and comity." *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994). "'A decision to relinquish pendent jurisdiction before the federal claims have been tried is, as we have said, the norm, not the exception . . . .'" *Contreras v. Suncast Corp.*, 237 F.3d 756, 766 (7th Cir. 2001). The plaintiff argues that judicial efficiency is an "extraordinary circumstance," *id.*, in which I might nonetheless retain jurisdiction. The Seventh Circuit has held that it was an abuse of discretion to remand a case where it had

11

been pending in district court for more than five years, the court had considered twenty-two motions, held nine hearings, issued nineteen orders, including a seventy-one page decision on a motion to dismiss, and "demonstrate[d] a mastery of the minutiae of airport administration, aviation commerce, as well as the inner workings of the various decision-making processes within Milwaukee County's government." *Miller Aviation v. Milwaukee County Bd. of Supervisors*, 273 F.3d 722, 732 (7th Cir. 2001).

By way of contrast, this case was pending in state court for more than a year before the plaintiff amended her complaint to add the federal claims and the defendant removed on that basis. I have had this case for less than two years, during which time I have decided only one substantive motion--a thirteen-page opinion on the motion to dismiss--and a few discovery motions. The law discussed so far in this case has been straightforward and fairly mechanical. The remaining issues in counts I and II are predominantly factual (*i.e.*, whether the City and its officers acted wilfully and wantonly) or raise unsettled issues of Illinois law (*i.e.*, the relationship between so-called "special duty" cases and the Tort Immunity Act). Although I addressed some arguments about immunity in my order on the motion to dismiss, I have had no occasion to consider the particular factual questions involved in the state claims, so the burden of deciding the factual issues would be the same for me as for a state court. Fairness here does not weigh in

12

favor of retaining jurisdiction; remand would send the plaintiff back to the court in which she originally chose to file her state law claims. Comity also weighs in favor of remand where the remaining issues raise questions purely of state law. Under the circumstances, judicial efficiency does not require that I retain jurisdiction over the state law claims, see *Wright*, 29 F.3d at 1251, so I remand them to state court.

IV.

Count IV is DISMISSED with prejudice as to defendants Onorato and Badillo, and I GRANT summary judgment on count IV in favor of Sergeant Keller. Counts I and II are REMANDED to the Circuit Court of Cook County, Illinois. The City's motion for summary judgment and all other pending motions are therefore DENIED as moot.

ENTER ORDER:

*Elaine E. Bucklo*

Elaine E. Bucklo
United States District Judge

Dated: March 29, 2002